STATE OF NEBRASKA, ON BEHALF OF THE MINOR CHILD ANGELA GARCIA, APPELLANT, V. ROBERT GARCIA, APPELLEE.
471 N.W.2d 388

Filed June 28, 1991.   No. 89-032.

Robert M. Spire, Attorney General, and Royce N. Harper for appellant.

Charles W. Campbell, Special Prosecutor.

No appearance for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

The State of Nebraska appeals from the decision of the Seward County District Court permitting appointment of a special prosecutor to replace the Seward County Attorney in a civil child support action and assessing against the Department of Social Services (DSS) fees and expenses incurred by the special prosecutor.

At the request of DSS, the Seward County Attorney filed a civil petition on April 5, 1988, seeking child support from Robert Garcia on behalf of Angela Garcia. Angela is the minor child of Robert Garcia and Candice D. Garcia, who were divorced in 1983. The original divorce decree did not provide for the support of Angela, but granted custody to Candice Garcia. Robert Garcia filed an answer and counterclaim to the child support petition requesting that he now be given custody of Angela.

Because the custody issue was raised by Robert Garcia in his counterclaim, the Seward County Attorney felt he had a conflict of interest and filed a motion for appointment of a special prosecutor. The district court appointed the prosecutor, and a settlement was later reached by the parties. The special prosecutor then filed an application for fees, and a hearing in the Seward County District Court was scheduled.

The district court found that implicit in every application to determine paternity and obtain support for a minor child is a preliminary determination of custody. The court stated that DSS should have known of this implicit finding and ruled that in this case, because the issue of custody was raised prior to the determination of support, fees incurred by a special prosecutor should be assessed against DSS because it initiated the action. The court then entered a judgment against DSS in the amount

of $300 for fees incurred by the special prosecutor in this case.

Although the State contested the assessment of fees against DSS at oral argument and in its brief requests this court to reverse the district court's decision allowing the fees, the State has failed to assign this point as error. Rather, the State assigns as error the Seward County prosecutor's decision to withdraw from the case and the district court's decision to permit the appointment of the special prosecutor.

We reverse the decision of the district court and hold that the district court's decision to appoint a special prosecutor in this case was in error, as was its decision to assess fees for the prosecutor against DSS.

Neb. Rev. Stat. § 43-512.01 (Reissue 1988) mandates that it is the duty of the county attorney to take action against a nonsupporting parent of a dependent child and to initiate either a criminal or a civil child support enforcement action against this parent. Neb. Rev. Stat. § 43-512.03 (Reissue 1988) makes more explicit the duties of the county attorney in obtaining and enforcing orders for child support, including establishing paternity and obtaining support for children born out of wedlock, enforcing child support orders through income withholding, and petitioning for a support order when no such order exists. In this case Robert and Candice Garcia were married at the time of Angela's birth, and Robert Garcia readily acknowledges his paternity. In his counterclaim he asked only for custody of his daughter.

The county attorney's obligation is to proceed on behalf of dependent children due child support from a nonsupporting parent. We agree with the Nebraska State Bar Association's advisory opinion that the county attorney may not represent both the interests of the child and the interests of a parent when the issue of custody of the child is raised. The county attorney's duties are clearly set forth in the statutes above. These duties do not include involvement in the determination of custody of a dependent child. Therefore, no conflict existed.

In this case Robert Garcia raised the issue of custody of his minor daughter as a part of the civil child support proceedings, and the county attorney determined that he was under a conflict of interest. A special prosecutor was appointed by the

court to replace the county attorney. We fail to see how appointment of the special prosecutor solved any conflict of interest problem in this case. When the county attorney declined to proceed with the civil support proceeding against Robert Garcia, the special prosecutor simply stepped into the shoes of the county attorney. It would have been equally unethical for the special prosecutor to proceed with the civil support action against Robert Garcia and at the same time become involved in the custody battle between Robert and Candice Garcia. Therefore, appointment of the special prosecutor did nothing to eliminate the supposed conflict of interest. We find the district court's appointment of the special prosecutor to be in error. However, since the parties have settled the matter, the only remaining issue is who should pay the expenses for the special prosecutor. We find the district court's decision to assess fees for the special prosecutor against DSS in derogation of the State's sovereign immunity. We note plain error by the district court and raise the issue on our own motion.

> " 'Plain error' is error which was unasserted or uncomplained of at trial or on appeal, but is plainly evident from the record, which prejudicially affects a litigant's substantial right and which is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process."

*In re Interest of A.M.H.*, 233 Neb. 610, 618, 447 N.W.2d 40, 46 (1989) (quoting *GFH Financial Serv. Corp. v. Kirk*, 231 Neb. 557, 437 N.W.2d 453 (1989)).

Neb. Const. art. V, § 22, states that "[t]he state may sue and be sued, and the Legislature shall provide by law in what manner and in what courts suits shall be brought." In *Gentry v. State,* 174 Neb. 515, 118 N.W.2d 643 (1962), we stated that this provision of the Constitution permits the state to consent to suit against itself on such terms and conditions as the Legislature may prescribe. This provision of the Constitution is not self-executing. The Legislature must act to make the provisions of § 22 available. *Patteson v. Johnson*, 219 Neb. 852, 367 N.W.2d 123 (1985). The Nebraska Legislature has previously

enacted many statutes which allow the state to be sued in its own courts. See, Neb. Rev. Stat. §§ 81-8,209 et seq. (Reissue 1987 & Cum. Supp. 1990) (State Tort Claims Act); Neb. Rev. Stat. §§ 84-901 et seq. (Reissue 1987 & Cum. Supp. 1990) (Administrative Procedure Act).

In this case the district court entered judgment for the special prosecutor's fees against DSS. The judgment was entered as a result of the State's prosecution of Robert Garcia for child support payments and is the equivalent of a suit against the State. We do not find any statute in which the Legislature has permitted a judgment for attorney fees to be entered against the State in an action for child support payments. In our review of articles 1, 2, 5, 7, 9, and 14 of chapter 43 of the Nebraska statutes, we note that DSS bears the cost of various services performed for the protection of juveniles in this state. See, Neb. Rev. Stat. §§ 43-258(4) and 43-284.02 (Reissue 1988).

The various costs borne by DSS do not include payment of fees incurred by a special prosecutor appointed by the court in a child support action. The Legislature has made no provision for payment of attorney fees by DSS in child support actions, and thus any judgment against the State for these fees violates state sovereignty. We do not determine at this time who is responsible for payment of fees for a special prosecutor. We do hold, however, that the district court cannot simply enter a judgment for fees against the State without specific legislative authorization. The decision of the district court is reversed.

REVERSED.